DAVID R. ZARO (BAR NO. 124334)
RYAN T. WAGGONER (BAR NO. 251694)
ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone:      (213) 622-5555
Fax:         (213) 620-8816
E-Mail:     dzaro@allenmatkins.com
                rwaggoner@allenmatkins.com

Attorneys for Defendant
ONEWEST BANK, FSB

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>　　　DIANE J. BEALL<br><br>DIANE J. BEALL, an individual,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>ONEWEST BANK, FSB, ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST; and all such persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title thereto; and DOES 1-10, Inclusive,<br><br>　　　Defendants. | Bankruptcy Case No. 10-16454-LT13<br><br>Adversary Case No. 11-90028-LT<br><br>REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS ADVERSARY COMPLAINT FOR FAILURE TO STATE A CLAIM [FRCP 12(b)(6)]<br><br>Date:      July 12, 2011<br>Time:     10:00 a.m.<br>Ctrm:     3<br>Judge:    Hon. Laura S. Taylor<br><br>Complaint Filed:    January 22, 2011 |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

885504.01/LA

Case No. 11-90028-LT
REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF MOTION TO DISMISS

1      Defendant OneWest Bank, F.S.B. ("OneWest") requests that the Court take

2  judicial notice of the following documents, pursuant to Federal Rules of Evidence,

3  Rule 201.

4      A.    Deed of Trust recorded on July 25, 2003, as Document No. 2003-

5  560852, in the Official Records of the County of Riverside.

6      B.    Corporate Assignment of Deed of Trust recorded on March 10, 2010,

7  as Document No. 2010-0109646, in the Official Records of the County of Riverside.

8      C.    Notice of Default and Election to Sell Under Deed of Trust recorded on

9  May 25, 2010 as Document No. 2010-0241020, in the Official Records of the

10  County of Riverside.

11      D.    Substitution of Trustee recorded on July 7, 2010 as Document

12  No. 2010-0316603, in the Official Records of the County of Riverside.

13      E.    Notice of Trustee's Sale recorded on August 27, 2010 as Document

14  No. 2010-0410987, in the Official Records of the County of Riverside.

15      F.    Order Denying Plaintiff's Ex Parte Motion for Temporary Restraining

16  Order and Preliminary Injunction in USDC/SDCA Case No. 10-CV-1900-

17  IEG(WVG), filed September 16, 2010.

18      G.    Order Granting OneWest Bank, F.S.B.'s Motion to Dismiss in

19  USDC/SDCA Case No. 10-CV-1900-IEG(WVG), filed December 23, 2010.

20

21  Dated:  February 22, 2011            ALLEN MATKINS LECK GAMBLE
                                            MALLORY & NATSIS LLP
22                                        DAVID R. ZARO
                                         RYAN T. WAGGONER
23

24                                       By:      /s/ Ryan T. Waggoner
                                             RYAN T. WAGGONER
25                                           Attorneys for Defendant
                                             ONEWEST BANK, FSB
26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

885504.01/LA                    -1-                    Case No. 11-90028-LT
                                                REQUEST FOR JUDICIAL NOTICE IN
                                                SUPPORT OF MOTION TO DISMISS

# Exhibit A

Recording Requested By:

**Lawyers Title Co.**

*[Company Name]*

And When Recorded Mail To:

**IndyMac Bank, F.S.B.**

*[Company Name]*

*[Name of Natural Person]*

155 North Lake Avenue

*[Street Address]*

Pasadena, CA 91101

*[City, State Zip Code]*

```
DOC # 2003-560852
07/25/2003 08:00A Fee:45.00
          Page 1 of 13
Recorded in Official Records
     County of Riverside
        Gary L. Orso
Assessor, County Clerk & Recorder
```

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|----|------|-------|-----|-------|
|   |   |   | 1    | 13   |    | 1    |       |     | SP    |
| A | R | L |      |      |    | COPY | LONG | REFUND | NCHG | EXAM |

45

T
SP

———————— *[Space Above This Line For Recording Data]* ————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated      July 20, 2003 together with all Riders to this document.

**(B)** "Borrower" is Diane J. Templin, an unmarried woman

. Borrower is the trustor under this Security Instrument.

**(C)** "Lender" is IndyMac Bank, F.S.B., a federally chartered savings bank

Lender is a      Federal Savings Bank      organized and existing under the laws of United States of America      . Lender's address is      155 North Lake Avenue, Pasadena, CA 91101

Lender is the beneficiary under this Security Instrument.

**(D)** "Trustee" is First American Title Insurance Company

**(E)** "Note" means the promissory note signed by Borrower and dated      July 20, 2003 The Note states that Borrower owes Lender    one hundred forty four thousand eight hundred and NO/100ths    Dollars (U.S. $ 144,800.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    August 1, 2033

**(F)** "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

Loan No: 2723036

| California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT | Form 3005 01/01 |
|---|---|
| —THE COMPLIANCE SOURCE, INC.— | 14001CA 08/00 |
| www.compliancesource.com    Page 1 of 12 | © 2000, The Compliance Source, Inc. |

**(G)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Revocable Trust Rider | |
| ☐ Other(s) [specify] | | |

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** "**Escrow Items**" means those items that are described in Section 3.

**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the          County          of          Riverside          :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

Loan No: 2723036

2003-560852
07/25/2003 00:00A
2 of 13

Click here to unlock TallPDF.NET

Legal description attached hereto and made a part hereof.

Assessor's Identification Number:    378212025

which currently has the address of                              16377 Arnold Avenue
                                                                                    *[Street]*
Lake Elsinore                , California            92530            ("Property Address"):
*[City]*                                                     *[Zip Code]*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    2.    **Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic

Loan No: 2723036

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                      Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                     Page 3 of 12                                               14001CA 08/00
www.compliancesource.com                                                                                      © 2000, The Compliance Source, Inc



2003-560852
07/25/2003 08:00A
3 of 13

Click here to unlock TallPDF.NET

Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within

Loan No: 2723036

---

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                      Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                    Page 4 of 12                                         14001CA 08/00
www.compliancesource.com                                                                                   © 2000, The Compliance Source, Inc.



2003-560852
07/25/2003 08:00A
4 of 13

---

Click here to unlock TallPDF.NET

10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters.  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim.  The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property.  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Loan No: 2723036

California  Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                      Form 3005  01/01
—THE COMPLIANCE SOURCE, INC.—                                   Page 5 of 12                                        14001CA 08/00
www.compliancesource.com                                                                           © 2000, The Compliance Source, Inc.



2003-560852
07/25/2003 08:00A
5 of 13

Printed on:10/13/2010 1:03 PM

Click here to unlock TallPDF.NET

6.   **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.   **Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and

Loan No: 2723036

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005  01/01
—THE COMPLIANCE SOURCE, INC.—                                Page 6 of 12                           14001CA  08/00
www.compliancesource.com                                                                   © 2000, The Compliance Source, Inc.



2003-569852
07/25/2003 08:00A
6 of 13

Click here to unlock TallPDF.NET

Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Loan No: 2723036

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                    Page 7 of 12                      14901CA 08/00
www.compliancesource.com                                                © 2000, The Compliance Source, Inc.



2003-560852
07/25/2003 08:00A
7 of 13

Printed on:10/13/2010 1:03 PM

Click here to unlock TallPDF.NET

"Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have

Loan No: 2723036

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                                      Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                    Page 8 of 12                                                              14001CA 08/00
www.compliancesource.com                                                                                                           © 2000, The Compliance Source, Inc.

2003-560852
07/25/2003 08:08A
8 of 13

Click here to unlock TallPDF.NET

been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such

Loan No: 2723036

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—     Page 9 of 12     14001CA 08/00
www.compliancesource.com     © 2000, The Compliance Source, Inc.



2003-560852
07/25/2003 08:00A
9 of 13

Printed on:10/13/2010 1:03 PM

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation
Branch :F32,User :W028                                                                                   Station ID :C6TL

Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the

Loan No: 2723036

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                          Page 10 of 12                                14001CA 08/00
www.compliancesource.com                                                                © 2000, The Compliance Source, Inc.



2003-560852
97/25/2003 00:00A
10 of 13

Click here to unlock TallPDF.NET

sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
Diane J. Templin                 -Borrower
                                 [Printed Name]

Printed Name: _____
              [Please Complete]

_____

_____ (Seal)
                                 -Borrower
                                 [Printed Name]

Printed Name: _____
              [Please Complete]

_____ (Seal)
                                 -Borrower
                                 [Printed Name]

_____ (Seal)
                                 -Borrower
                                 [Printed Name]

_____ [Acknowledgment on Following Page] _____

Loan No: 2723036

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                        Page 11 of 12                       14001CA 08/00
www.compliancesource.com                                                   © 2000, The Compliance Source, Inc.



2003-560852
07/25/2003 08:00A
11 of 13

Click here to unlock TallPDF.NET

State of   California                    §
                                         §
County of   Riverside                    §

On *July 23,2003 before me, Carla Mayfield    , personally appeared  Diane J. Templin **

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

(Seal)

Notary Public    Carla Mayfield    *[Printed Name]*

My Commission Expires:    3-20-04

OFFICIAL SEAL
CARLA MAYFIELD
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 1254449
RIVERSIDE COUNTY
MY COMM. EXP.MARCH. 20, 2004

Loan No: 2723036

| California  Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT | Form 3005 01/01 |
|---|---|
| —THE COMPLIANCE SOURCE, INC.— | 14001CA 08/00 |
| www.compliancesource.com | © 2000, The Compliance Source, Inc |

Page 12 of 12



2003-560852
07/25/2003 08:00A
12 of 13

Order Number: 0628-2249762
Page Number: 5

## LEGAL DESCRIPTION

Real property in the City of Lake Elsinore, County of Riverside, State of California, described as follows:

LOT 95, UNIT "G", COUNTRY CLUB HEIGHTS, ELSINORE, IN THE CITY OF ELSINORE, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 18 PAGE 15 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

EXCEPT 1/10 OF ANY AND ALL MINERALS AND 1/7 OF ANY AND ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES, IN UPON OF UNDER SAID LAND AS RESERVED TO GREAT COASTAL OIL CORPORATION IN DEED RECORDED FEBRUARY 4, 1936 IN BOOK 263 PAGE 596 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

APN: 378-212-025-8



2003-560852
07/25/2003 08:00A
13 of 13

First American Title

RIVERSIDE, CA  Document:TD 2003.560852

Page:13 of 13

Printed on:10/13/2010 1:03 PM

Click here to unlock TallPDF.NET

# Exhibit B

Generated by TallPDF.NET Evaluation
Branch :F32,User :W028                                                                Station ID :C6TL

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING
[AND WHEN RECORDED MAIL TO]
OneWest Bank, FSB
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #: 2723036

DOC # 2010-0109646
03/10/2010 08:00A Fee:18.00
Page 1 of 1
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder




## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC FEDERAL BANK, FSB, SUCCESSOR TO INDYMAC BANK, F.S.B., WHOSE ADDRESS IS 6900 BEATRICE DR. , KALAMAZOO, MI 49009, (ASSIGNOR),, by these presents does convey, grant, sell, assign, transfer and set over the described Deed of Trust together with the certain note(s) described therein, without recourse, representation or warranty, together with all right, title and interest secured thereby, all liens, and any rights due or to become due thereon to OneWest Bank, FSB, WHOSE ADDRESS IS 888 E. WALNUT STREET , PASADENA, CA 91101, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).
Said Deed made by DIANE J. TEMPLIN and recorded on 07/25/2003 as Inst# 2003-560852 in Book , Page  in the office of the RIVERSIDE County Recorder, California.
Property more commonly known as: 16377 ARNOLD AVENUE, LAKE ELSINORE, CA 92530

This assignment is made without recourse, representation or warranty, express or implied, by the FDIC in any capacity.

Dated:01/21/2010
FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC FEDERAL BANK, FSB, SUCCESSOR TO INDYMAC BANK, F.S.B.

By:_____
   BRYAN BLY ATTORNEY-IN-FACT

STATE OF FLORIDA          COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me this 21st day of January in the year 2010 by BRYAN BLY, well known to me to be the ATTORNEY-IN-FACT of FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC FEDERAL BANK, FSB, SUCCESSOR TO INDYMAC BANK, F.S.B., a corporation, on behalf of the corporation.

_____
CRYSTAL MOORE DD 927242    Notary Public

My Commission expires: 09/23/2013
Prep by: Jessica Fretwell/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

OWBAS 10741382  CJ2412180                                                    form5/FRMCA1

*10741382*

CRYSTAL MOORE
Notary Public, State of Florida
Commission # DD 927242
Expires September 23, 2013
Bonded Through National Notary Assn.

RIVERSIDE, CA Document:AS 2010.109646                                        Page:1 of 1

Printed on:1/21/2011 10:24 AM

Click here to unlock TallPDF.NET

# Exhibit C

Generated by TallPDF.NET Evaluation
Branch :F32,User : W028                                                      Station ID :C6TL

2 cn

DOC # 2010-0241020
05/25/2010 08:00A Fee:27.00
Page 1 of 4
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

Glenn M. Perrell Atty @ law

· Recording requested by:
  Quality Loan Service Corp

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
|   |   |   |      |      |     |      |      |     |      |
| M | A | L | 465  | 426  | PCOR | NCOR | SMF | NCHG | EXAM |
|   |   |   |      |      |     | T:   | CTY  | UNI | 043  |

TS # CA-10-363459-TC                Order #

27
C
043

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.** You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account (normally five business days prior to the date set for the sale of your property). No sale may be set until three months from the date this notice of default is recorded (which date of recordation appears on this notice). This amount is $4,617.85 as of 5/24/2010 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

OneWest Bank, FSB
C/O Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711

RIVERSIDE, CA  Document:ND 2010.241020                                Page:1 of 4

Printed on:1/21/2011 10:24 AM

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation
Branch :F32,User :W028                                                                                    Station ID :C6TL

TS No.: CA-10-363459-TC

**Notice of Default and Election To Sell Under Deed of Trust**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.
Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN:  That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 7/20/2003, executed by DIANE J.  TEMPLIN , AN UNMARRIED WOMAN, as Trustor, to secure certain obligations in favor of INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK A FEDERAL SAVINGS BANK, as beneficiary, recorded 7/25/2003, as Instrument No. 2003-560852, in Book xxx, Page xxx of Official Records in the Office of the Recorder of  RIVERSIDE County, California describing land therein: **as more fully described in said Deed of Trust.**
Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $144,800.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:
The installments of principal and interest which became due on 1/1/2010, and all subsequent installments of principal and interest through the date of this Notice, plus amounts that are due for late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustee's fees, and any attorney fees and court costs arising from or associated with the beneficiaries efforts to protect and preserve its security, all of which must be paid as a condition of reinstatement, including all sums that shall accrue through reinstatement or pay-off. Nothing in this notice shall be construed as a waiver of any fees owing to the Beneficiary under the Deed of Trust pursuant to the terms of the loan documents.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The Beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2923.5. Pursuant to the attached declaration incorporated herein and made a part hereof by this reference.

Dated: 5/24/2010                              **Quality Loan Service Corp., AS AGENT FOR BENEFICIARY**
                                              BY: LSI Title Company, as Agent


                                              By: _____
                                                         Eric R.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation
Branch :F32,User :W028

Station ID :C6TL



10035614136

DIANE TEMPLIN

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation
Branch :F32,User :W028

Station ID :C6TL

DIANE TEMPLIN

### DECLARATION PURSUANT TO CAL. CIV. CODE SECTION 2923.5(b):

The undersigned mortgagee, beneficiary or authorized agent hereby declares under penalty of perjury, under the laws of the State of California, as follows:

☒    The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since the borrower was contacted.

☐    The mortgagee, beneficiary or authorized agent has tried with due diligence to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐    The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.5 because:

     ☐    the borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

     ☐    the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

     ☐    the borrower has filed for bankruptcy, and the proceedings have not yet been finalized.

INDYMAC MORTGAGE SERVICING

Date:   3/4/2010      By: _____

_____

RIVERSIDE, CA  Document:ND 2010.241020        Page:4 of 4

Printed on:1/21/2011 10:24 AM

Click here to unlock TallPDF.NET

# Exhibit D

Generated by TallPDF.NET Evaluation
Branch :F32,User :W028                                                  Station ID :C6TL

Recording requested by:



When recorded mail to:

Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711

```
DOC # 2010-0316603
07/07/2010 08:00A Fee:24.00
        Page 1 of 3
Recorded in Official Records
      County of Riverside
        Larry W. Ward
Assessor, County Clerk & Recorder
```

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
|   |   |   | 3    |      |    |      |      |     |      |
| M | A | L | 465  | 426  | PCOR | NCOR | SMF | NCHG | EXAM |
|   |   |   |      |      |    |      | T:   | CTY | UNI  | 025 |

TS #:    CA-10-363459-TC                           Space above this line for recorders use
         1003561436
Order #  100318009-CA-DCI                                          24
                                                                   T
                                                                  025

# Substitution of Trustee

   WHEREAS, DIANE J. TEMPLIN , AN UNMARRIED WOMAN was the original Trustor,
FIRST AMERICAN TITLE INSURANCE COMPANY was the original Trustee, and INDYMAC
BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK A FEDERAL SAVINGS BANK
was the original Beneficiary under that certain Deed of Trust dated 7/20/2003 and recorded on
7/25/2003 as Instrument No. 2003-560852, in book xxx, page xxx of Official Records of
RIVERSIDE County, CA; and

   WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

   WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of
Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the
manner provided for in said Deed of Trust,

   NOW, THEREFORE, the undersigned hereby substitutes QUALITY LOAN SERVICE
CORPORATION ,as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or
neuter, and the singular number includes the plural.

Page 1

RIVERSIDE, CA  Document:ST 2010.316603                                    Page:1 of 3

Printed on:1/21/2011 10:24 AM

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

Branch :F32,User :W028                                                          Station ID :C6TL

Substitution of Trustee - CA
TS # CA-10-363459-TC
Page 2

See Attached "Exhibit A"

Dated:  6-10-10                              OneWest Bank, FSB



                                            By:   Suchan Murray
State of___Texas___  )                            Authorized Signatory
County of___Travis___ )

On _6-10-10_ Date before me, _Katherine Braddock_ a notary public,  personally appeared
___Suchan Murray___      who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____Texas_____ that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Katherine Braddock_ (Seal)

> KATHERINE AMY SCOTT BRADDOCK
> Notary Public, State of Texas
> My Commission Expires
> May 20, 2014

RIVERSIDE, CA  Document:ST 2010.316603                              Page:2 of 3

Printed on:1/21/2011 10:24 AM

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation
Branch :F32,User :W028

Station ID :C6TL

## Exhibit "A"
### Affidavit of Mailing
### for Substitution of Trustee By Code

TS No.: **CA-10-363459-TC**
Trustor: DIANE J.  TEMPLIN , AN UNMARRIED WOMAN

I, Sandy Lopez, declare: That I am an employee of **Quality Loan Service Corp.**, an agent for beneficiary, whose business address is:

        2141 5th Avenue
        San Diego, CA 92101

I am over the age of eighteen years and in accordance with California Civil Code Section 2934, I caused a copy of the attached Substitution of Trustee to be mailed, in the manner provided in Section 2924(b) of the Civil Code of the State of California, to the trustee of record under the Deed of Trust described in said Substitution and to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed at San Diego, CA on 6/18/2010.


_____
Sandy Lopez

Click here to unlock TallPDF.NET

# Exhibit E

Generated by TallPDF.NET Evaluation
Branch :F32,User :W028                                                    Station ID :C6TL

Recording requested by:
Quality Loan Service Corp.

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

DOC # 2010-0410987
08/27/2010 08:00A Fee:21.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|----|----|------|-----|------|
|   |   |   | 465  | 426  | PCOR | NCOR | SMF | NCHG | EXAM |
| M | A | L |      |      |    |    |      |     |      |
|   |   |   |      |      |    | T: |      | CTY | UNI | 043 |

TS # CA-10-363459-TC          Order #100318009-CA-DCI

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 7/20/2003. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):     **DIANE J. TEMPLIN , AN UNMARRIED WOMAN**
Recorded:       7/25/2003 as Instrument No. 2003-560852 in book xxx, page xxx of Official Records in the office of the Recorder of RIVERSIDE County, California;

Date of Sale:   **9/17/2010 at 10:00 AM**
Place of Sale:  **At the Main Street entrance to the County Courthouse, 4050 Main Street, Riverside, CA 92501**
Amount of unpaid balance and other charges: **$135,818.65**
The purported property address is:        **16377   ARNOLD AVE
                                          LAKE ELSINORE, CA 92530**

Assessors Parcel No. 378-212-025-8

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, please refer to the referenced legal description for property location. In the event no common address or common designation of the property is provided herein directions to the location of the property may be obtained within 10 days of the date of first publication of this Notice of Sale by sending a written request to OneWest Bank, FSB 2900 Esperanza Crossing  Austin TX 78758

Pursuant to California Civil Code §2923.54 the undersigned, on behalf of the beneficiary, loan servicer or authorized agent, declares as follows:

[ 1 ] The mortgage loan servicer has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed;

[ 2 ] The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 .

RIVERSIDE, CA  Document:NT 2010.410987                                    Page:1 of 2

Printed on:1/21/2011 10:24 AM

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation
Branch :F32,User :W028

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.

Date: 8/26/2010

Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711 For NON SALE information only
Sale Line: 714-730-2727 or Login to: www.fidelityasap.com
Reinstatement Line: (877) 908-4357

Quality Loan Service Corp. by: Ronald Alonzo, as Authorized Agent.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

RIVERSIDE, CA  Document:NT 2010.410987

Page:2 of 2

Printed on:1/21/2011 10:24 AM

Click here to unlock TallPDF.NET

# Exhibit F

1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9             **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    DIANE BEALL FKA TEMPLIN,                         CASE NO. 10-CV-1900-IEG (WVG)

12                              Plaintiff,        **ORDER DENYING PLAINTIFF'S
                                                 EX PARTE MOTION FOR
13          vs.                                  TEMPORARY RESTRAINING
                                                 ORDER AND PRELIMINARY
14    QUALITY LOAN SERVICE CORP.;                INJUNCTION**
      ONEWEST BANK, F.S.B.; and DOES 1-10,
15                                               [Doc. No. 3]
                             Defendants.
16
              Presently before the Court is Plaintiff Diane Beall's motion for temporary restraining order
17
      and preliminary injunction, seeking the enjoinment of a foreclosure sale.  (Doc. No. 3.)   For the
18
      reasons set forth below, the Court DENIES Plaintiff's motion.
19
                                          **BACKGROUND**
20
              This case involves a loan obtained by Plaintiff, which is secured by a Deed of Trust on her
21
      property.  A foreclosure sale is currently set for September 17, 2010.  On September 13, 2010,
22
      Plaintiff proceeding *pro se* filed a Complaint against Defendant OneWest Bank, F.S.B. ("OneWest"),
23
      the purported current beneficiary of the loan, and Defendant Quality Loan Service Corp. ("Quality
24
      Loan Service"), the purported current Trustee.
25
              The Complaint sets forth twenty causes of action: (1) violation of the Truth in Lending Act,
26
      (2) violation of the California Rosenthal Fair Debt Collection Practices Act, (3) violation of the Fair
27
      Debt Collection Practices Act; (4) violation of California Civil Code §§ 1916.7 and 1918.5-1921, (5)
28

wrongful foreclosure, (6) violation of the Real Estate Settlement Procedures Act, (7) breach of fiduciary duty, (8) fraud, (9) negligent misrepresentation, (10) violation of California Business and Professions Code § 17200, (11) breach of contract, (12) breach of implied covenant of good faith and fair dealing, (13) violation of California Civil Code § 2923.5, (14) quiet title/lis pendens, (15) rescission, (16) accounting, (17) constitutional violations, (18) civil rights violations, (19) declaratory relief, and (20) preliminary injunction. Along with the Complaint, Plaintiff filed the instant motion for a temporary restraining order and preliminary injunction, seeking this Court's order enjoining the foreclosure sale.[1]  (Doc. No. 3.)

## LEGAL STANDARD

In determining whether to grant a temporary restraining order or preliminary injunction, the Court applies the preliminary injunction standard articulated in Winter v. Natural Res. Def. Council, Inc., — U.S. —, 129 S.Ct. 365 (2008). A party seeking a preliminary injunction must demonstrate: (1) the likelihood of success on the merits; (2) the likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Id. at 374. Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 375-76.

## DISCUSSION

Plaintiff has failed to show the requisite likelihood of success on the merits to warrant equitable relief. Notably, a party moving for injunctive relief must demonstrate irreparable injury is "likely" in the absence of an injunction, rather than merely possible. See id. at 375.

The primary basis for Plaintiff's motion is that OneWest does not have standing to foreclose, because neither the Note nor Deed of Trust was assigned to OneWest. Plaintiff submits recorded documents relating to the property, as well as a Declaration from a forensic title and financial auditor who has reviewed these documents. Contrary to Plaintiff's contention, the recorded documents indicate the original lender assigned the Deed of Trust and Note to OneWest. On July 20, 2003, Plaintiff signed a promissory note for $144,800 with the original lender, IndyMac Bank, F.S.B.,

---

[1] In the motion, Plaintiff states she has given notice of the motion to Defendants. There is no accompanying proof of service.

10v1900

secured by a Deed of Trust on her property. The Deed of Trust indicates the original Trustee was First American Title Insurance Company. On March 10, 2010, a Corporate Assignment of Deed of Trust was recorded, stating the Federal Deposit Insurance Corporation, as receiver for IndyMac Federal Bank, F.S.B., successor to original lender IndyMac Bank, F.S.B., assigned the Deed of Trust and Note to OneWest. On May 25, 2010, Quality Loan Service recorded a Notice of Default. On July 7, 2010, a Substitution of Trustee was recorded, substituting Quality Loan Service as Trustee under the Deed of Trust in place of the original Trustee, First American Title Insurance Company. On August 27, 2010, Quality Loan Service filed a Notice of Trustee's Sale. Based on these documents, Plaintiff is not likely to prevail on her argument that OneWest is not the beneficiary of the Note and Deed of Trust.

Although Quality Loan Services filed the Notice of Default before the Substitution of Trustee was recorded, Plaintiff cites no authority suggesting this is grounds for invalidating the foreclosure sale. Under California law, Quality Loan Service, as agent of the beneficiary, was permitted to initiate the foreclosure sale. California Civil Code § 2924(a)(1), which sets forth the comprehensive statutory scheme governing non-judicial foreclosure sales, permits the foreclosure process to be conducted by the "trustee, mortgagee or beneficiary *or any of their authorized agents*." Cal. Civ. Code § 2924(a)(1) (emphasis added). In addition, Section 2934a(b) expressly addresses the situation where "the substitution is effected after a notice of default has been recorded but prior to the recording of the notice of sale." Id. § 2934(a)(b). In such situation, "the beneficiary . . . shall cause a copy of the substitution to be mailed, prior to the recording thereof, in the manner provided in Section 2924b, to the trustee then of record." Id. Here, the documents submitted to the Court indicate Defendants complied with this requirement. The "Affidavit of Mailing for Substitution of Trustee," dated June 18, 2010, states Quality Loan Service as agent for the beneficiary caused a copy of the Substitution of Trustee to be mailed to the trustee of record.

Plaintiff also argues Deustche Bank National Trust Company is in possession of the actual Note, not OneWest. Even if this is true, possession or production of the original promissory note is not required in order to initiate a non-judicial foreclosure sale. See, e.g., Cal. Civ. Code 2924; Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1186 (N.D. Cal. 2009); Blanco v. Am.

10v1900

Home Mortg. Servicing, Inc., 2009 WL 4674904, at *9 (E.D. Cal. Dec. 4, 2009); Wood v. Aegis Wholesale Corp., 2009 WL 1948844, at *4 (E.D. Cal. July 6, 2009). Courts have reasoned that the detailed non-judicial foreclosure procedures provided by California Civil Code §§ 2924-2924k are exhaustive, and these procedures do not require possession and production of the note. See Moeller v. Lien, 30 Cal. Rptr. 2d 777 (1994).

Finally, the Complaint and attached documents also fail to demonstrate Plaintiff is likely to succeed as to the merits.[1] As an initial matter, many of Plaintiff's causes of action provide only for monetary relief, not injunctive relief. Also, because Plaintiff filed this Complaint seven years after signing the promissory note, many of the claims are barred by the statute of limitations. In addition to the reasons set forth earlier, Plaintiff has not demonstrated likelihood of success as to the wrongful foreclosure, rescission, or quiet title causes of action because the Complaint fails to allege Plaintiff is able and willing to tender the underlying debt. Under California law, "[i]n obtaining rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction." Fleming v. Kagan, 11 Cal. Rptr. 737, 740 (Ct. App. 1961); see also Karlsen v. Am. Sav. & Loan Assn., 92 Cal. Rptr. 851, 854 (Ct. App. 1971). Also, "[i]t is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." Shimpones v. Stickney, 219 Cal. 637, 649 (1934).

Because Plaintiff has failed to show the requisite likelihood of success on the merits, the Court does not consider the remaining three factors.

//
//
//
//
//
//

---

[1] Plaintiff contends the Complaint and attached documents show Defendants lack standing to foreclose, but fails to provide any supporting analysis.

10v1900

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CONCLUSION

For the foregoing reasons, Plaintiff has not carried her burden of showing that a temporary restraining order or preliminary injunction should be issued.  Accordingly, the Court DENIES Plaintiff's motion.  The hearing on the motion for preliminary injunction scheduled for October 18, 2010 is vacated.

**IT IS SO ORDERED.**

DATED:  **September 16, 2010**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

10v1900

# Exhibit G

1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

11

12

| | |
|---|---|
| DIANNE BEALL FKA TEMPLIN,<br>Plaintiff,<br><br>vs.<br><br>QUALITY LOAN SERVICE CORP.;<br>ONEWEST BANK, F.S.B.; and DOES 1-10,<br><br>Defendants. | CASE NO: 10-CV-1900-IEG (WVG)<br><br>**ORDER GRANTING ONEWEST<br>BANK, F.S.B.'S MOTION TO<br>DISMISS**<br><br>[Doc. No. 8] |

13

14

15

16

17

18

19

20

21

    Presently before the Court is Defendant OneWest Bank, F.S.B.'s ("OneWest") motion to dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). [Doc. No. 8.] The motions have been fully briefed and considered without oral argument under Civil Local Rule 7.1(d)(1). For the reasons set forth below, the Court GRANTS OneWest's motion.

## BACKGROUND

22

23

24

25

26

27

    Unless otherwise noted, the following facts are drawn from Plaintiff's Complaint. [Doc. No. 1.]

    On July 23, 2003, Plaintiff obtained a loan of $144,800 from IndyMac Bank, F.S.B., to purchase a single-family residence, located at 16377 Arnold Avenue, Lake Elsinore, CA. The loan was secured by a Deed of Trust on the property.

28

1

1    On July 11, 2009, the Office of Thrift Supervision closed IndyMac Bank, F.S.B.; appointed the

2    FDIC as Receiver for IndyMac Bank, F.S.B. under 12 U.S.C. §§ 1464(d)(2)(A) and 1821(c)(5);

3    chartered a new institution, IndyMac Federal Bank, F.S.B., as successor-in-interest; and appointed the

4    FDIC as Conservator to operate the new institution. See Ibarra v. Plaza Home Mortg., No. 08-CV-

5    01707-H (JMA), 2009 WL 2901637, at *2 (S.D. Cal. Sept. 4, 2009).  On January 21, 2010, the FDIC,

6    as receiver for IndyMac Federal Bank, F.S.B., assigned the Deed of Trust and Note related to

7    Plaintiff's loan to OneWest.[1]  Pl.'s Compl. [Doc. No. 1], Ex. E.

8    In March 2009, Plaintiff incurred significant unexpected medical debt and was no longer able

9    to make the monthly payments for her home loan. Id. ¶ 36.  Defendant Quality Loan Service Corp.

10    ("Quality Loan") recorded a Notice of Default on May 25, 2010.  On July 7, 2010, a Substitution of

11    Trustee was recorded, substituting Quality Loan as Trustee under the Deed of Trust in place of the

12    original Trustee, First American Title Insurance Company. On August 27, 2010, Quality Loan Service

13    filed a Notice of Trustee's Sale and scheduled a foreclosure sale for September 17, 2010.

14    On September 13, 2010, Plaintiff, proceeding *pro se* but also an attorney licensed in the State

15    of California, filed a Complaint against Defendant OneWest, the purported current beneficiary of the

16    loan, and Defendant Quality Loan, the purported current trustee.[2] [Doc. No. 1.]  The Complaint

17    included a motion for a temporary restraining order and preliminary injunction, requesting the Court to

18    enjoin the scheduled foreclosure sale.  The Court denied Plaintiff's motion. [Doc. No. 4.]  It is unclear

19    from the record whether or when the Trustee Sale actually occurred.

20    

21    [1] OneWest asserts that it entered an agreement with the FDIC to purchase and service certain
loans originated by IndyMac. OneWest further argues that, under that agreement, it cannot be held

22    liable for any bad acts committed by IndyMac.  To support this contention, OneWest points to one
decision in which a federal court interpreted the agreement between OneWest and the FDIC. See

23    Def.'s Mot. to Dism.[Doc. No. 8], at 4-5 (citing Benito v. Indymac Mortg. Services, 2010 WL
2130648, at *1-2 (D. Nev. May 21, 2010)).  The Court has not had the opportunity to review

24    OneWest's agreement with the FDIC.  However, because the Court dismisses all of Plaintiff's claims, it
need not reach the issue of OneWest's potential liability under its agreement with the FDIC.

25    [2] Defendant Quality Loan Service Corporation filed a declaration of nonmonetary status under

26    CAL. CIV. CODE § 2924*l* as the trustee under the Deed of Trust.

27    Throughout Plaintiff's Complaint, Plaintiff appears to allege wrongdoing by several additional
parties, though she has neither named those parties as Defendants nor served them with any documents

28    related to this action.  The Court will not consider any allegations against non-parties.

1    While the caption of Plaintiff's Complaint lists twenty causes of action, the Complaint only

2    substantively alleges the following fifteen: (1) violation of the Truth in Lending Act ("TILA"),

3    (2) violation of California's Rosenthal Fair Debt Collection Practices Act ("R-FDCPA"), (3) violation

4    of the Federal Fair Debt Collection Practices Act ("FDCPA"); (4) wrongful foreclosure, (5) violation

5    of Real Estate Settlement Procedures Act ("RESPA"), (6) breach of fiduciary duty, (7) fraud—

6    intentional misrepresentation, (8) fraud—negligent misrepresentation, (9) violation of California's

7    Unfair Competition Law ("UCL"), CAL. BUS. & PROF CODE § 17200 et seq., (10) breach of contract,

8    (11) breach of implied covenant of good faith and fair dealing, (12) violation of CAL. CIV. CODE §

9    2923.5, (13) quiet title, (14) injunctive relief, and (15) rescission under TILA.

10    **LEGAL STANDARD**

11    I.    **FED. R. CIV. P. 12(B)(6)**

12    A complaint must contain "a short and plain statement of the claim showing that the pleader is

13    entitled to relief." FED. R. CIV. P. 8(a). A motion to dismiss pursuant to Rule 12(b)(6) of the Federal

14    Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. FED. R.

15    CIV. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all

16    factual allegations pleaded in the complaint as true, and must construe them and draw all reasonable

17    inferences from them in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336,

18    337-38 (9th Cir.1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed

19    factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its

20    face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when

21    the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

22    defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949

23    (2009) (citing Twombly, 550 U.S. at 556).

24    However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

25    requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

26    action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986))

27    (alteration in original). A court need not accept "legal conclusions" as true. Iqbal, 129 S. Ct. at 1949.

28    In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the

court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 557).

Additionally, defenses based on relevant statutes of limitations may be raised on a Rule 12(b)(6) motion to dismiss when the statute's running is apparent on the face of the complaint. <u>Jablon v. Dean Witter & Co.</u>, 614 F.2d 677, 682 (9th Cir. 1980).

For a <u>Rule 12(b)(6)</u> motion, a court generally cannot consider material outside the complaint. See <u>Branch v. Tunnell</u>, 14 F.3d 449, 453-54 (9th Cir.1994), *overruled on other grounds by* <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119 (9th Cir.2002). A court may, however, consider exhibits submitted with the complaint. <u>Van Winkle v. Allstate Ins. Co.</u>, 290 F. Supp. 2d 1158, 1162 n.2 (C.D. Cal. 2003). In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." <u>Marder v. Lopez</u>, 450 F.3d 445, 448 (9th Cir.2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 706 (9th Cir.1998). A court may disregard allegations in the complaint if they are contradicted by facts established by exhibits attached to the complaint. <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir.1987). Thus, this Court may consider pertinent loan and foreclosure documents submitted by Plaintiff and Defendant OneWest.

## II.    FED. R. CIV. P. 9(B)

Fraud claims must be pleaded to satisfy the particularity requirements of Rule 9(b). A claim of fraud must have the following elements: "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance;

1    (d) justifiable reliance; and (e) resulting damage." In re Estate of Young, 160 Cal. App. 4th 62, 79

2    (2008) (quoting Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996) (internal quotation marks

3    omitted)).  Federal Rule of Civil Procedure 9(b) requires that each of these elements be pleaded with

4    particularity.  The Ninth Circuit has "interpreted Rule 9(b) to mean that the pleader must state the time,

5    place and specific content of the false representations as well as the identities of the parties to the

6    misrepresentation." Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392-93 (9th Cir. 1988).

7    Averments of fraud must be accompanied by the "who, what, when, where, and how" of the

8    misconduct charged. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation

9    omitted).  Additionally, "the plaintiff must plead facts explaining why the statement was false when it

10   was made." Smith v. Allstate Ins. Co., 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) (citation omitted);

11   see In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc) (superseded by statute

12   on other grounds).

13                                          **DISCUSSION**

14   **I.       TILA CLAIMS (FIRST AND FIFTEENTH CAUSES OF ACTION)**

15           Plaintiff's claims for damages and to exercise her right to rescind under TILA are time-barred.

16   A plaintiff must bring an action for damages under TILA "within one year from the date of the

17   occurrence of the violation"—that is, the date the loan was executed. See 15 U.S.C. § 1640(e); King v.

18   California, 784 F.2d 910, 913 (9th Cir. 1986).

19           TILA and its regulations require "a creditor shall deliver two copies of the notice of the right to

20   rescind to each consumer entitled to rescind." 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b)(1).  If the

21   creditor provides such notice, TILA's "buyer's remorse" provision allows borrowers three business

22   days to rescind the loan without penalty. 15 U.S.C. § 1635(a).  Where, as Plaintiff alleges here, the

23   creditor fails to deliver the notice and required material disclosures, the borrower may rescind the loan

24   within three years after it was consummated. Id. § 1635(f); 12 C.F.R. § 226.23(a)(3).  The statute of

25   limitations for TILA claims begins to run when the loan transaction is executed. King, 784 F.2d at

26   913.

27

28

1    Here, the loan transaction was executed on July 23, 2003. Plaintiff did not file her complaint

2    until September 2010—more than seven years after entering the loan agreement and well outside of the

3    time permitted to raise TILA claims.

4    While "the doctrine of equitable tolling may, in the appropriate circumstances, suspend the

5    limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or

6    nondisclosures that form the basis of the TILA action," King, 784 F.2d at 915, Plaintiff has not alleged

7    specific facts demonstrating that she could not have discovered the alleged violations by exercising

8    reasonable diligence. See Meyer v. Ameriquest Mortg. Co., 342 F.3 899, 902 (9th Cir. 2003) (refusing

9    to apply equitable tolling to TILA claim because the plaintiff was in full possession of all loan

10    documents and did not allege any concealment of loan documents or other action that would have

11    prevented discovery of the alleged TILA violations); Hubbard v. Fid. Fed. Bank, 91 F.3d 75, 79 (9th

12    Cir.1996) (the plaintiff was not entitled to equitable tolling of her TILA claim because "nothing

13    prevented [plaintiff] from comparing the loan contract, [the lender's] initial disclosures, and TILA's

14    statutory and regulatory requirements"). Thus, Plaintiff has not pleaded facts giving rise to equitable

15    tolling.

16    Accordingly, Plaintiff's TILA claims for rescission and damages are **DISMISSED**

17    **WITHOUT PREJUDICE.**

18    **II.    CLAIMS UNDER CALIFORNIA'S R-FDCPA AND THE FEDERAL FDCPA (SECOND AND THIRD CAUSES OF ACTION)**

19    Plaintiff alleges that OneWest violated the R-FDCPA and the FDCPA by initiating nonjudicial

20    foreclosure procedures. The FDCPA prohibits debt collectors from making false or misleading

21    representations and from engaging in various abusive and unfair practices." Heintz v. Jenkins, 514

22    U.S. 291, 292 (1995). The R-FDCPA incorporates the majority of the FDCPA. See CAL. CIV. CODE

23    § 1788.17.

24    Neither a consumer's creditors, a mortgage servicing company, nor any assignee of the

25    mortgage debt may face liability under either the R-FDCPA or the FDCPA because they are not

26    considered "debt collectors" as defined by either act. Lal v. Am. Home Serv., Inc., 680 F. Supp. 2d

27    1218, 1224 (E.D. Cal. 2010); Connors v. Home Loan Corp., 2009 WL 1615989, at *5 (S.D. Cal. June

28    9, 2009). Moreover, parties cannot face liability for foreclosing upon a property pursuant to a deed of

trust because such foreclosure is not "debt collection" within the meaning of the FDCPA or the R-FDCPA. Connors, 2009 WL 1615989, at *5.

Because OneWest is not a debt collector and has not engaged in debt collection as defined by either the FDCPA or the R-FDCPA, OneWest cannot face liability under either statute. Thus, the Court **DISMISSES** Plaintiff's FDCPA and R-FDCPA claims **WITH PREJUDICE**.

**III.    CLAIM FOR WRONGFUL FORECLOSURE (FOURTH CAUSE OF ACTION)**

The Court first reiterates that nothing in the record demonstrates that Plaintiff's property has actually been sold at a Trustee's Sale. Because Plaintiff has not alleged that a Trustee's Sale has in fact occurred, her wrongful foreclosure claim fails for being premature. Rosenfeld v. JPMorgan Chase, N.A., --- F. Supp. 2d ---, 2010 WL 3155808, at *5 (N.D. Cal. Aug. 9, 2010) (citing Munger v. Moore, 11 Cal. App. 3d 1, 7 (1970)). Even assuming that a Trustee's Sale has taken place, Plaintiff's wrongful foreclosure claim still fails.

Plaintiff claims that OneWest does not have standing to foreclose because neither the Note nor Deed of Trust was properly assigned to OneWest. To support this claim, Plaintiff submitted recorded documents related to the property and a declaration from a forensic title and financial auditor who reviewed those documents. Contrary to Plaintiff's contention, the recorded documents indicate the original lender assigned the Deed of Trust and Note to OneWest.

On July 20, 2003, Plaintiff signed a promissory note for $144,800 with the original lender, IndyMac Bank, F.S.B., secured by a Deed of Trust on her property. The Deed of Trust indicates First American Title Insurance Company as the original trustee. On March 10, 2010, the FDIC, as receiver for IndyMac Federal Bank, F.S.B., successor to original lender IndyMac Bank, F.S.B., recorded a Corporate Assignment of Deed of Trust, assigning the Deed of Trust and Note to OneWest. On May 25, 2010, Quality Loan recorded a Notice of Default. On July 7, 2010, a recorded Substitution of Trustee substituted Quality Loan as Trustee under the Deed of Trust in place of the original Trustee, First American Title Insurance Company. On August 27, 2010, Quality Loan filed a Notice of Trustee's Sale.

Quality Loan filed the Notice of Default before the Substitution of Trustee was recorded, but Plaintiff cites no authority suggesting this is grounds for invalidating the foreclosure sale. Under

California law, Quality Loan, as agent of the beneficiary, is permitted to initiate the foreclosure sale. California Civil Code § 2924(a)(1), which sets forth the comprehensive statutory scheme governing nonjudicial foreclosure sales, permits the "trustee, mortgagee or beneficiary *or any of their authorized agents"* to conduct the foreclosure process. CAL. CIV. CODE § 2924(a)(1) (emphasis added). In addition, Section 2934a(c) expressly states that, where "the substitution is effected after a notice of default has been recorded but prior to the recording of the notice of sale, the beneficiary . . . shall cause a copy of the substitution to be mailed, prior to, or concurrently with, the recording thereof, in the manner provided in Section 2924b, to the trustee then of record."

Plaintiff also argues that Deutsche Bank National Trust Company, rather than OneWest, is in possession of the actual Note. Even if this is true, possession or production of the original promissory note is not required to initiate a nonjudicial foreclosure sale. CAL. CIV. CODE 2924; see, e.g., Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1186 (N.D.Cal.2009); Blanco v. Am. Home Mortg. Servicing, Inc., 2009 WL 4674904, at *9 (E.D. Cal. Dec.4, 2009); Wood v. Aegis Wholesale Corp., 2009 WL 1948844, at *4 (E.D. Cal. July 6, 2009). The detailed procedures for nonjudicial foreclosure provided by California Civil Code Sections 2924-2924k are exhaustive, and those procedures do not require possession or production of the note. See Nguyen v. Wells Fargo Bank, N.A., --- F. Supp. 2d ---, 2010 WL 4348127, at *12 (N.D. Cal. Oct. 27, 2010); Moeller v. Lien, 25 Cal. App. 4th 822 (1994).

Finally, Plaintiff's claim for wrongful foreclosure also fails because she has not demonstrated that she is able and willing to tender the underlying debt. Nguyen, 2010 WL 4348127, at *11-12.

Thus, the Court **DISMISSES** Plaintiff's wrongful foreclosure claim **WITH LEAVE TO AMEND**.

## IV.    CLAIMS UNDER RESPA (FIFTH CAUSE OF ACTION)

Plaintiff alleges two violations of RESPA, 12 U.S.C. §§ 2601-2617. First, at the time of the loan's closing, Plaintiff alleges that an unspecified Defendant failed to provide a servicing statement as required under 12 U.S.C. § 2605(a). Second, Plaintiff alleges that an unspecified Defendant failed to properly respond to a Qualified Written Request ("QWR") as set forth in 12 U.S.C. § 2605(e). Plaintiff has failed to adequately plead either allegation.

1    Plaintiff's allegation that, at the loan's closing, she did not receive the disclosures required

2    under RESPA, is time-barred.  Claims of failure to provide disclosures at the closing of a loan must be

3    brought within three years of the loan's consummation.  12 U.S.C. § 2614 (providing a three-year

4    statute of limitations for claims arising under 12 U.S.C. § 2605); see id. § 2605(a) (requiring lenders to

5    make certain disclosures "at the time of the application for the loan").

6        Here, Plaintiff obtained her loan in July 2003.  Her claim under Section 2605(a) therefore

7    expired in July 2006.  Plaintiff did not file the instant Complaint, however, until September 2010.

8    Plaintiff's claim under section 2605(a) is therefore time-barred.[3]

9        Plaintiff claims that unspecified Defendants did not respond to a QWR, but she does not state

10    to whom or when she made the QWR; nor does she state the nature of the request made in the QWR.

11    See Pl.'s Compl. ¶ 98.  Numerous courts have dismissed similar claims, requiring plaintiffs to plead

12    additional facts in order to state a claim for relief under RESPA.  See, e.g., Delino v. Platinum Cmty.

13    Bank, 628 F. Supp. 2d 1226, 1231-32 (S.D. Cal. 2009) (plaintiff failed to allege to whom specifically

14    plaintiff made QWRs, when plaintiff made such requests, how defendants failed to respond to such

15    requests, and how defendant met the statutory definition of a "servicer"); Champlaie v. BAC Home

16    Loans Servicing, LP, 2009 WL 3429622, at *7 (E.D. Cal. Oct. 22, 2009) (plaintiff failed to allege the

17    purported QWR requested information related to servicing); Pickard v. WMC Mortg. Corp., 2009 WL

18    3416134, at *8 (E.D. Cal. Oct. 21, 2009) (plaintiff failed to describe the purported QWR, attach the

19    QWR, allege to whom such writing was sent, and allege actual damages).

20

21

22        [3] Plaintiff does not explicitly raise a claim under Section 2607 of RESPA, which prohibits

23    "kickbacks and unearned fees."  12 U.S.C. § 2607.  But, she does allege that unspecified Defendants
     "received money and/or things of value for referrals of settlement service business related to the

24    Subject Loan, in addition to charging Plaintiff for services that were never rendered."  Pl.'s Compl.
     ¶ 100.  Such claims would arise under Section 2607.  Plaintiff, however, does not state when such

25    violations allegedly occurred.  The Court notes that, to the extent Plaintiff intended to allege violations

26    of Section 2607 related to the consummation of her loan, such claims are also time-barred.  A plaintiff
     must raise claims under Section 2607 within one year from the date of the violation.  12 U.S.C. § 2614.

27    Here, Plaintiff entered the loan transaction in July 2003, but did not raise any claims under RESPA
     until September 2010—more than seven years after the date of the alleged violation, and well-outside

28    the time permitted for such claims.

1    Plaintiff has not provided sufficient details about her QWR; the party to whom it was directed;

2    or the response, or lack thereof, by the party to whom Plaintiff directed her QWR. Thus, Plaintiff has

3    failed to state a claim under 12 U.S.C. § 2605.[4]

4    Moreover, Plaintiff has baldly asserted that the alleged failure to respond to her QWR caused

5    her to suffer actual damages, but she has not stated allegations demonstrating pecuniary loss.

6    Plaintiff's RESPA claim fails as a result. Caravantes v. Cal. Reconveyance Co., 2010 WL 4055560, at

7    *4 (S.D. Cal. Oct. 14, 2010) ("To recover actual damages under 12 U.S.C. § 2605(f)(1)(A), a number

8    of courts have held a plaintiff must state allegations demonstrating pecuniary loss."); Hamilton v. Bank

9    of Blue Valley, --- F. Supp. 2d ---, 2010 WL 4222724, at *12 (E.D. Cal. Oct. 20, 2010) (dismissing a

10   RESPA claim for the plaintiffs' failure to allege pecuniary loss); Amaral v. Wachovia Mortgage Corp.,

11   692 F.Supp.2d 1226, 1232 (E.D. Cal. 2010) (dismissing RESPA claim because Plaintiff's damages

12   allegation did not amount to a factual allegation, only a conclusory statement of law); Garcia v.

13   Wachovia Mortgage Corp., 676 F.Supp.2d 895, 909 (C.D. Cal.2009) (same).

14   Accordingly, the Court **DISMISSES WITH LEAVE TO AMEND** Plaintiff's RESPA claims.

15   **V.    CLAIM FOR BREACH OF FIDUCIARY DUTY (SIXTH CAUSE OF ACTION)**

16   Plaintiff claims that "all Defendants" breached a fiduciary duty to her; however, she does not

17   identify any fiduciary duty owed to her or breached by OneWest. Plaintiff only alleges wrongdoing by

18   Scott Steiner and Help-U-Sell—neither of which is a party to this action. Pl.'s Compl. ¶¶ 102-109.

19   To plead a cause of action for breach of fiduciary duty, a plaintiff must show "the existence of

20   a fiduciary relationship, its breach, and damage proximately caused by that breach. The absence of any

21   one of these elements is fatal to the cause of action." Rosenfeld v. JPMorgan Chase Bank, N.A., --- F.

22   Supp. 2d ---, 2010 WL 3155808, at *14 (N.D. Cal. Aug. 9, 2010) (quoting Pierce v. Lyman, 1 Cal.

23   App. 4th 1093, 1101 (1991)). Under California law, lenders do not owe borrowers any fiduciary duty

24   "absent special circumstances with . . . 'fiduciary characteristics.'" Id. at *13 (quoting Oaks Mgmt.

25   _____

26   [4] Plaintiff states in her opposition to the motion to dismiss that she "sent several QWRs to
     IndyMac FSB, and their purported servicer OneWest," and that "Defendants" acknowledged receipt of

27   the QWRs but failed to respond appropriately. [Doc. No. 10, ¶ 83.] Even if Plaintiff had included
     those allegations in her complaint, her RESPA claims would still lack sufficient specificity to survive a

28   motion to dismiss.

1  Corp. v. Superior Court, 145 Cal. App. 4th 453, 466 (2006)). "[A]s a general rule, a financial

2  institution owes no duty of care to a borrower when the institution's involvement in the loan

3  transaction does not exceed the scope of its conventional role as a mere lender of money." Id. (citing

4  Nymark v. Heart Fed. Savings & Loan Assn., 231 Cal.App.3d 1089, 1096 (1991)) (alteration in

5  original).

6          Plaintiff alleges that OneWest owns or administers Plaintiff's loan.  Plaintiff has not alleged

7  any actions by OneWest that go beyond the scope of its role as a lender of money or any other special

8  circumstances that would create a fiduciary duty.  Because Plaintiff has not sufficiently alleged that

9  OneWest owed her a fiduciary duty, Plaintiff's claim fails.  Plaintiff's claim for breach of fiduciary

10  duty is **DISMISSED WITHOUT PREJUDICE**.

11  **VI.    CLAIMS FOR FRAUD—INTENTIONAL AND NEGLIGENT MISREPRESENTATION**
    **(SEVENTH AND EIGHTH CAUSES OF ACTION)**

12

13          "In alleging fraud or mistake, a party must state with particularity the circumstances

14  constituting fraud or mistake." FED. R. CIV. P. 9(b).  Allegations under Rule 9(b) must be stated with

15  "specificity including an account of the time, place, and specific content of the false representations as

16  well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756,

17  764 (9th Cir.2007).

18          Plaintiff raises fraud claims against "all Defendants," but only alleges that non-parties Scott

19  Steiner and Help-U-Sell defrauded her by intentionally and negligently misrepresenting facts about the

20  condition of the property to induce her to enter the loan transaction.  Plaintiff has not alleged any

21  fraudulent behavior by OneWest.  Plaintiff has not alleged the circumstances constituting the alleged

22  fraud with enough specificity "to give [OneWest] notice of the particular misconduct . . . so that they

23  can defend against the charge and not just deny that they have done anything wrong." Vess v. Ciba-

24  Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citations

25  omitted).  Accordingly, Plaintiff's fraud claims are **DISMISSED WITHOUT PREJUDICE**.

26  **VII.    CLAIM UNDER CALIFORNIA'S UCL (NINTH CAUSE OF ACTION)**

27          Plaintiff alleges violations of the UCL, CAL. BUS. & PROF. CODE §§ 17200-17210, by merely

28  reciting the elements of a UCL claim without any specific allegations of wrongdoing by OneWest.  See

11

1    Pl.'s Compl. ¶¶ 130-134 ( "Defendants[] committed unlawful, unfair and/or fraudulent business

2    practices . . . ."). UCL claims derive from other illegal or fraudulent conduct committed by a

3    defendant, and Plaintiff, therefore, must state the facts supporting her UCL claim against OneWest

4    with reasonable particularity. Nguyen v. Wells Fargo Bank, N.A., --- F. Supp. 2d ---, 2010 WL

5    4348127, at *15 (N.D. Cal. Oct. 27, 2010) (citing Lomboy v. SCME Mortg. Brokers, 2009 WL

6    1457738, at *7 (N.D. Cal. May 26, 2009)). Plaintiff, however, does not distinguish between the

7    alleged conduct of Defendant OneWest and those of non-parties to this action. Accordingly, her UCL

8    claim fails.

9        Moreover, to the extent that Plaintiff's UCL claim stems from the origination of the loan—i.e.,

10   that her UCL claims are supported by her allegations of fraud and violations of TILA and RESPA—

11   they are time-barred. A plaintiff must bring her UCL claims "within four years after the cause of

12   action accrued." CAL. BUS. & PROF. CODE § 17208. Here, Plaintiff's claims stem from the alleged

13   circumstances surrounding the origination of her loan, which occurred in July 2003. Thus, Plaintiff's

14   UCL claims expired in July 2007.

15       Accordingly, Plaintiff's UCL claim is **DISMISSED WITHOUT PREJUDICE.**

16   **VIII.  CLAIMS FOR BREACH OF CONTRACT AND BREACH OF THE IMPLIED
      COVENANT OF GOOD FAITH AND FAIR DEALING (TENTH AND ELEVENTH
17   CAUSES OF ACTION)**

18       Plaintiff alleges that "all Defendants" breached the terms of and violated the implied covenant

19   of good faith and fair dealing contained in the loan agreement, the promissory note, and the deed of

20   trust by (1) failing to disclose information about the condition of the property before Plaintiff entered

21   the loan transaction, (2) failing to "put as much consideration to Plaintiff[s] interests as to Defendants'

22   interests," (3) wrongfully initiating foreclosure proceedings in violation of California law. None of

23   those allegations can sustain Plaintiff's claim. See Pl.'s Compl. ¶¶ 135-152.

24       Under California law, every contract imposes upon all parties a duty of good faith and fair

25   dealing in its performance and enforcement. Rosenfeld, 2010 WL 3155808, at *12 (quoting McClain

26   v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 796 (2008)). To establish a breach of an implied

27   covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual

28   obligation, along with conduct that frustrates the other party's rights to benefit from the contract.

1   Racine & Laramie, Ltd. v. Dep't of Parks & Recreation, 11 Cal. App. 4th 1026, 1031-32 (1992). The

2   implied covenant of good faith and fair dealing defines duties that grow out of specific contractual

3   obligations; it "cannot impose substantive duties or limits on the contracting parties beyond those

4   incorporated in the specific terms of their agreement." Agosta v. Astor, 120 Cal. App. 4th 596, 607

5   (2004) (internal citation omitted). "There is no obligation to deal fairly or in good faith absent an

6   existing contract." Newson v. Countrywide Home Loans, Inc., 2010 WL 4939795, at *4 (N.D. Cal.

7   Nov. 30, 2010) (quoting Racine & Laramie, 11 Cal. App. 4th at 1031-32).

8       Plaintiff's first allegation—that parties failed to disclose information about the property's

9   condition—stems from actions, engaged in by parties other than OneWest, that allegedly occurred

10  before Plaintiff entered any contract. "Pre-contract conduct cannot support a claim for breach of the

11  implied covenant of good faith and fair dealing." Qureshi v. Countrywide Home Loans, Inc., 2010

12  WL 841669, at *10 (N.D. Cal. Mar. 10, 2010) (citing McClain, 159 Cal. App. 4th at 799). Moreover,

13  because Plaintiff has not alleged that OneWest was involved in appraising the property, this allegation

14  cannot support a claim against OneWest. Hutson v. Am. Home Mortg. Servicing, Inc., 2009 WL

15  3355312, at *9-10 (N.D. Cal. Oct. 16, 2009). And even if Plaintiff had made such allegations against

16  OneWest, a lender performing an appraisal in the usual course of its loan processing procedures for the

17  purpose of ensuring that the property provides adequate security for the loan owes no duty of care to

18  the borrower. See Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (1991).

19  Thus, this allegation cannot support Plaintiff's claims for breach of contract or for breach of the

20  implied covenant of good faith and fair dealing.

21      Plaintiff's second allegation—that Defendants "put as much consideration to Plaintiff'[s]

22  interests as to Defendants' interests"—also fails. "[A]s a general rule, a financial institution owes no

23  duty of care to a borrower when the institution's involvement in the loan transaction does not exceed

24  the scope of its conventional role as a mere lender of money." Id. (citations omitted). A lender owes

25  no duty to protect the success of the borrower's investment. Id.

26      Finally, as discussed above, Plaintiff failed to sufficiently plead that OneWest or any other

27  party has wrongfully initiated foreclosure proceedings. Accordingly, Plaintiff's third allegation—that

28

1    defendants breached the implied covenant of good faith and fair dealing by wrongfully foreclosing—

2    also fails.

3        Thus, Plaintiff's claims for breach of contract and for breach of the implied covenant of good

4    faith and fair dealing are **DISMISSED WITHOUT PREJUDICE.**

5    **IX.    CLAIM UNDER CAL. CIV. CODE § 2923.5 (TWELFTH CAUSE OF ACTION)**

6        California Civil Code Section 2923.5 requires a trustee, beneficiary, or authorized agent to

7    contact a borrower at least thirty days prior to filing a notice of default to assess the borrower's

8    financial situation and to explore options for the borrower to avoid foreclosure.  Plaintiff alleges that

9    OneWest failed to contact Plaintiff as required under California law.

10        OneWest, however, is a federal savings bank, regulated by the Office of Thrift Supervision

11    ("OTS") and the Home Owner's Loan Act of 1933, 12 U.S.C. § 1464 ("HOLA").  "Under HOLA,

12    OTS enjoys 'plenary and exclusive authority ... to regulate all aspects of the operations of federal

13    savings associations' and its authority 'occupies the entire field of lending regulation for federal

14    savings associations." Andrade v. Wachovia Mortgage, FSB, 2009 WL 1111182, *2 (S.D. Cal. 2009)

15    (citing 12 C.F.R. §§ 545.2 and 560.2(a)).  Discussing HOLA's reach, the Supreme Court held that "[a]

16    savings and loan's mortgage lending practices are a critical aspect of its 'operation' . . . ." Fidelity

17    Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 167 (1982).  California's requirements for

18    contacting borrowers and including specific declarations in the Notice of Default fall within the scope

19    of HOLA's Section 560.2(b)(10), which addresses the "[p]rocessing, origination, servicing, sale or

20    purchase of, or investment or participation in, mortgages." Pinales v. Quality Loan Serv. Corp., 2010

21    WL 3749427, at *3 (S.D. Cal. Sept. 22, 2010) (citations omitted).

22        Plaintiff's claim under Section 2923.5 of the California Civil Code is therefore preempted by

23    federal law.  Accordingly, the Court **DISMISSES** Plaintiff's Section 2923.5 claim **WITH**

24    **PREJUDICE.**

25    **X.    CLAIMS FOR QUIET TITLE (THIRTEENTH CAUSE OF ACTION)**

26        The purpose of a quiet title action is to determine "all conflicting claims to the property in

27    controversy and to decree to each such interest or estate therein as he may be entitled to." Newman v.

28    Cornelius, 83 Cal. Rptr. 435, 437 (Ct. App. 1970); CAL. CIV. P. CODE § 760.020(a).  California law

14

1  requires "a plaintiff seeking to quiet title in the face of a foreclosure [to] allege tender or an offer of

2  tender of the amount borrowed." Mangindin v. Wash. Mut. Bank, 637 F. Supp. 2d 700, 712 (N.D. Cal.

3  2009) (citing Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 3d 575, 578 (1984)); Manown v. Cal-

4  Western Reconveyance Corp., 2009 WL 2406335, at *6 (S.D. Cal. Aug. 4, 2009).

5      Plaintiff claims that Quality Loan Services recorded the Notice of Default before Quality Loan

6  was substituted in as the trustee for Deed of Trust. As a result, Plaintiff argues, the notice of default

7  was invalid.

8      "The trustee, mortgagee, or beneficiary, *or any other authorized agents*" can validly file a

9  notice of default. CAL. CIV. CODE § 2924(a)(1). The notice of default identifies Quality Loan as an

10  "agent for the beneficiary." Pl.'s Compl., Ex. A. There is no statutory requirement that the authorized

11  agent must be recorded. Nothing in the record indicates that the notice of default was invalid.

12      Moreover, Plaintiff has failed to allege that she is able and willing to tender the underlying

13  debt. Accordingly, the Court **DISMISSES WITH LEAVE TO AMEND** Plaintiff's claim to quiet

14  title.

15  **XI.    CLAIM FOR INJUNCTIVE RELIEF (FOURTEENTH CAUSE OF ACTION)**

16  A request for injunctive relief is a remedy rather than a cause of action. Vissuet v. Indymac Mortg.

17  Services, 2010 WL 1031013, at *7 (S.D. Cal. Mar. 19, 2010) (citing Shell Oil Co. v. Richter, 52 Cal.

18  App. 2d 164, 168 (1942). Because the Court has dismissed Plaintiff's substantive claims, the Court

19  **DISMISSES WITH PREJUDICE** Plaintiff's claim for injunctive relief. Provided, however, that

20  Plaintiff amends her complaint to sufficiently state any substantive causes of actions, Plaintiff's request

21  for injunctive relief as a *remedy* will remain viable where appropriate.

### CONCLUSION

22      For the reasons stated above, the Court **GRANTS** Defendants' motion to dismiss and orders

23  the following:

24      1.  Plaintiff's claims under California's Rosenthal Fair Debt Collection Procedures Act, the

25          Federal Fair Debt Collection Procedures Act, California Civil Code Section 2923.5, and

26          for Injunctive Relief are **DISMISSED WITH PREJUDICE**;

27

28

2. Plaintiff's claims under the Truth in Lending Act, the Real Estate Settlement Procedures Act, California's Unfair Competition Law, for Wrongful Foreclosure, Breach of Fiduciary Duty, Fraud—Intentional Misrepresentation, Fraud—Negligent Misrepresentation, Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, and to Quiet Title are **DISMISSED WITHOUT PREJUDICE**; and

3. Plaintiff may file an amended complaint within twenty (20) calendar days from the date of this Order.  Should Plaintiff fail to amend her complaint within the time permitted, her claims will be dismissed **WITH PREJUDICE**.

**IT IS SO ORDERED.**

DATED: 12/23/2010

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

1

## **PROOF OF SERVICE**

2    I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) and not a party to this action. My business address is 515

3    South Figueroa Street, Ninth Floor, Los Angeles, California 90071-3309.

4    On February 22, 2011, I served the within document(s) described as:

5    REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO

    DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM

6    [FRCP 12(b)(6)]

7    with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

8

9    Garry Harre, Esq.                      *Counsel for Plaintiff*

    Global Capital Law, PC                 T: 714.907.4182 – F: 714.907.4175

    17612 Beach Boulevard, Suite 8         E: globalcapitallaw@gmail.com

10   Huntington Beach, CA 92647-6873

11   David L. Skelton, Esq.                 *Chapter 13 Trustee*

    525 "B" Street, Suite 1430             T: 619.338.4010 – F: 619.239.5242

12   San Diego, CA 92101-4432              E: dskelton@covad.net

13   ☐ **COURTESY COPY BY MAIL:** I placed a true copy of the document in a

14   sealed envelope or package addressed as indicated above in Los Angeles, California for collection and mailing pursuant to the firm's ordinary business

15   practice. I am familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with

16   the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if

17   postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

18   ☐ **COURTESY COPY BY DIRECT E-MAIL:** I caused a true copy of the

19   document to be sent to the person/s at the corresponding electronic address/es above from fkalve@allenmatkins.com. I am readily familiar with this firm's

20   Microsoft Outlook electronic mail system and did not receive an electronic message or other indication that the transmission was unsuccessful.

21   I declare under penalty of perjury that I am employed in the office of a

22   member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

23   Executed on February 22, 2011, at Los Angeles, California.

24

    _____              _____

25   Frederick Kalve

    (Type or print name)                   (Signature of Declarant)

26

27

28

1

## **PROOF OF SERVICE**

2        I am employed in the County of Los Angeles, State of California.  I am over
the age of eighteen (18) and not a party to this action.  My business address is 515
3   South Figueroa Street, Ninth Floor, Los Angeles, California 90071-3309.

4        On February 22, 2011, I served the within document(s) described as:

5        REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO
     DISMISS ADVERSARY COMPLAINT FOR FAILURE
6        TO STATE A CLAIM [FRCP 12(b)(6)]

7   with the Clerk of the Court using the CM/ECF system which will send notification
of such filing to:

8

9   Garry Harre, Esq.                 *Counsel for Plaintiff*
Global Capital Law, PC         T: 714.907.4182 – F: 714.907.4175
17612 Beach Boulevard, Suite 8   E: globalcapitallaw@gmail.com
10  Huntington Beach, CA 92647-6873

11  David L. Skelton, Esq.         *Chapter 13 Trustee*
525 "B" Street, Suite 1430      T: 619.338.4010 – F: 619.239.5242
12  San Diego, CA 92101-4432     E: dskelton@covad.net

13  ☐  **COURTESY COPY BY MAIL:**  I placed a true copy of the document in a
14  sealed envelope or package addressed as indicated above in Los Angeles,
California for collection and mailing pursuant to the firm's ordinary business
15  practice.  I am familiar with the firm's practice of collection and processing
correspondence for mailing.  Under that practice it would be deposited with
16  the U.S. Postal Service on that same day in the ordinary course of business.
I am aware that on motion of party served, service is presumed invalid if
17  postal cancellation date or postage meter date is more than one day after date
of deposit for mailing in affidavit.

18  ☐  **COURTESY COPY BY DIRECT E-MAIL:**  I caused a true copy of the
19  document to be sent to the person/s at the corresponding electronic address/es
above from fkalve@allenmatkins.com.  I am readily familiar with this firm's
20  Microsoft Outlook electronic mail system and did not receive an electronic
message or other indication that the transmission was unsuccessful.

21       I declare under penalty of perjury that I am employed in the office of a
22  member of the bar of this Court at whose direction the service was made and that the
foregoing is true and correct.

23       Executed on February 22, 2011, at Los Angeles, California.

24

     Frederick Kalve
25         (Type or print name)             (Signature of Declarant)

26

27

28